22-1032 Robert v. Austin. Council for appellant, first one, who's going to argue can come to the podium, make your appearance, and proceed, please. Good morning, your honors. Todd Callender for the plaintiff appellants. I'd like to argue for about ten minutes and leave some rebuttal time for my co-counsel, five minutes for him. I pray that my words fall on open ears in this court. Thank you for giving me the opportunity to appear. This case is the third time in human history where a court is going to have the opportunity to decide on what standards should apply to government-mandated experimentation on human beings. That's what this case is really about. Well, I guess for me, it's first about justiciability. Sure. And with respect to standing, we assess standing at the time the complaint was filed. And so we don't look at events that occurred after that, we look at at the time the complaint was filed. And at that time, your clients weren't subject to any requirement that they be vaccinated. The question, in some respects, your honor, is whether it's a vaccine at all. The issue is whether or not it was. They weren't subject to any requirement that they receive a needle in their arm, whether you called a vaccine or not. When the military makes promises, two promises, number one, that they defense intends to ask the president for an exemption to do so involuntarily, I take the military at their word. When they say they're going to invade a country, they do. Well, and you don't take them at their word, but the rules of standing are pretty specific because that's a constitutional restriction on our ability to take up questions that aren't properly before us. And when you filed your complaint, the president hadn't approved it yet, and there were no requirements at that time that anyone have, what was it, the emergency EUA. Yes, emergency use authorization. No one was required to do that, and we didn't know yet if they would be required because the president hadn't even acted yet. Am I correct about the timing of all this? There was a promise by the Secretary of Defense that there would, in fact, be a mandatory emergency use authorization vaccine given to all of the service members at the time we filed this complaint. There is no greater basis for standing than a violation of somebody's constitutional rights, including their 13th to not be experimented upon. These are the issues before the court, and nobody has greater standing than to remain a human. These are gene modification experiments that our military proposed and did conduct on the entirety of our military. But to the point of Judge McHugh, the presidential action that led subsequent to that to the statement requiring the vaccines, those two things took place after the complaint was filed. Irrespective of whether the Secretary of Defense had made a promise that I'm going to do X, Y, and Z, the actual legal compulsion that existed by virtue of the president speaking and then the secretary following up with his own statement, those two things occurred after the complaint was filed. Is that right? I think that the declaration of an emergency by itself created standing, and it also created an 1107 basis that should there be, the mere threat, should there be involuntary vaccination, that the tenets of 1107 apply. And this is exactly what happened in the Doe case. Doe v. Rumsfeld 20 years prior is the exact same set of circumstances, except in that case they were actually appealing the issue. They were actually in the appellate process. Some had been refused to take the shots, some had never even been asked to take the shots. We're in the very same situation. Eventually, I'm going to be able to go back and confirm what I think to be the case by looking at the record. What I'm asking you to do right now is answer a very simple question, and that simple question is to help me with the timeline so I can better frame your argument. And that timeline is, when that complaint was filed, had the President issued his requirement that all federal employees have the vaccination, and had the Secretary issued his statement that vaccines will be compulsory. Had both of those things happened or not? No, Your Honor. Both of those things did not happen. What happened instead is the requirement, they suggested, they promised, and they promised the military, a promise of the President, in my world, is certainly enough to take them at their word. And I think the mere promise alone creates the pretense, it creates the expectation, and in fact now we know that it did happen. So here we sit in the circumstance where we're looking back and asking whether or not we should have ever heard the case. Had we received the ability to get these facts and evidence, we would have found at that very time, by virtue of the amended complaint, everything that we alleged. And I'm not saying that you didn't file the complaint shortly before those two acts. One day. Okay, fine. All right. Let's assume, although to Judge McHugh's point, we're supposed to be looking at the world as it existed when the complaint is filed. But let's assume for the moment we blow past the one day, you still have a situation where, at the time that that complaint was filed, let's assume now we're in the world where the President had acted and the Secretary of Defense had acted, your client still had no obligation to do anything. And it didn't end, they had a process of appeal which would have determined whether they would be subject to doing anything. Is that not right? The process of appeal was in fact a fraud. There were no appeals. The appellate process, they created algorithms to deny all of the religious exemptions. Well, no. Number one, let's back up. You filed no class action motion. There is no class action. We never got to the class action. That's exactly right. So there's no talking about other people. We're talking about your two clients. Those are the only two people before us, right? That is true, Your Honor. Okay. If those are the only two people before us, as it relates to those two people, they had a temporary exemption, as I understand it, in one case. In the other case, they were neither one of them. Neither actually, at that point in time, had even applied for an exemption, Your Honor. Those came much later, significantly later. And in fact, in the case of Plaintiff Mulvihill, she didn't actually apply for the exemption. She was offered it and given it in a case of- And doesn't that kind of undermine your argument that these exemptions aren't really available? This is the point. One of your clients has an exemption that still covers her. This was a function of intentional mooting, Your Honor. This was done so that the Department of Defense could create circumstances, conditions whereby there would be no standing. As of two weeks ago, the Pentagon called the commanding officer of Plaintiff Robert and asked, why is he not prosecuted? Why is he not kicked out? Why does he still have a pending exemption? That was done for the purpose of taking away standing and jurisdiction of this court, or of the trial court. Well, shouldn't we wait to see what happens with the internal proceedings of the military- No, Your Honor. And whether they will give them an exemption before the court should step in and interfere with the military? The harm is already done, Your Honor. If you look at the state of our military today, it the mandate by itself has destroyed readiness. They're at 30% down readiness now because of the mandate, and they cannot replace troops that are being kicked out right now. And why is that- Our military is ineffective. Why is that state of the world before us? We're talking about your two clients and whether they should get relieved. If you want to bring some other soldier in here or serviceman who has a valid claim that they have been harmed, then we'll talk about them. But you're talking about your two clients now, right? We're talking about my two clients who cannot wait for the injunction because they were effectively kicked out on the basis that they wouldn't get the shots. That's the answer to your question, Your Honor. If you don't mind, I'd like to reserve some rebuttal time for my co-counsel. Yes. Thank you, Your Honor. Thank you, John. May it please the Court, Sarah Clark for the United States. This case is now moved. Neither plaintiff is subject to the military's COVID-19 vaccination requirement, and there's no reasonable expectation that they will be in the future. As a result, they have no more stake in this litigation. Well, I mean, your friend just said that the reason that they don't have any liability to get vaccinated is because they were kicked out because they challenged the order to get vaccinated. That's not accurate, Your Honor. So Plaintiff Robert was retired on the basis of medical disability. It had absolutely nothing to do with the COVID-19 vaccination requirement. For Plaintiff Mulvihill, obviously, she had an exemption that she requested for the vast majority of this litigation. And when she returned, she decided that she preferred to separate as she was honorably discharged, rather than challenge the military's decision. She waived her right to challenge that separation decision before the military. So she, I mean, Well, but in the supplemental briefing on mootness, it appears that the plaintiffs do not agree with your factual allegations. So it's kind of difficult for us. We're not, you know, we don't determine facts to decide it on mootness when the parties don't agree on what happened and why. Sure. So I think what they do agree on is that Plaintiff Mulvihill is not in the military any longer and has not been since September 1st. And they also agree that Plaintiff Robert will retire on Monday and is already on terminal leave. But even if this court didn't want to wade into the mootness question, that doesn't resolve their standing problem. As you were discussing with the opposing counsel, standing has to be decided at the time of the original complaint. And that was before the military had required the vaccine, decided what the deadlines would be, what exemptions might be available. It was also before we knew whether the vaccine and when it would be licensed by FDA. So just to clarify, there are different statutory regimes by which a vaccine can be okayed for market. So there can be an emergency use authorization. That's what issued for the Pfizer vaccine in December of 2020. And there can also be a license and you can have one or the other. You can have both. And that's relevant to the military's ability to require it. And it's also relevant to whether statutes that plaintiffs cite even apply here. Obviously, by the time the military required the vaccine, the vaccine was fully approved and licensed by the FDA. So it was no longer in the EUA? So at that point, it was both. So FDA issued the license and they also reissued the EUA at that time. And one of the main reasons why they did that is because the EUA covers other uses. So for example, it covers a vaccine for children. It covers boosters, basically uses that are not relevant for the military because the license covered the just primary series for ages 16 and up for the Pfizer vaccine. So at that point, that vaccine use was covered by both a license and an EUA. For plaintiff's purposes, it doesn't really matter that it's also covered by an EUA because it is fully FDA approved. And again, of course, at the time of the original complaint, none of that had happened yet. They filed suit before the requirement issued. And I think events in this case have just borne out how speculative their claims were and why it was premature for them to file suit in August. Well, does the fact that it's fully approved move the case? I don't think the approval moves the case. I think it completely undermines plaintiff's challenges on the merits. The mooting comes from the fact that plaintiffs are not subject to this requirement anymore. So they have no personal stake in the requirement. Any relief that this court might grant on what if this court were to give them what they requested in their complaint, it would do nothing for them in the real world. Could you clarify that? What precise remedy is requested by the plaintiffs here? So they request a couple of things. They request that this court find the military vaccine requirement illegal until there's been a presidential waiver under 1107 or 1107A. And they also request that this court grant them a medical exemption based on natural immunity. And obviously, neither of those are going to do them any good at this point. Well, with respect to the first one, the basis for being illegal was that it wasn't fully approved by the FDA. Correct. So that's obviously not correct. So that's moot, right? Sure. I guess I hadn't been thinking of it as a mootness issue, rather just a sort of legally incorrect understanding of what statutes apply here. Well, even if they were right and that statute applied, their whole argument was based on the status of emergency use authorization as opposed to full FDA approval. Am I understanding that? Yes, that's correct. So 1107. So that one's gone. And so the question about that they wanted a medical exemption based on their natural immunities, it seems to me, turns on, if we're just focused on mootness, not standing, on were they driven out of the military because they refused to get vaccinated? Because if that is true, which it seems to be what they're alleging, I mean, you can't drive them out and then say, ha ha, it's moot because you're out. Right. I mean, we certainly disagree with their characterization of the facts. I mean, again, I think for Robert, for example, they agree that he is disabled and so they don't dispute that that was the basis of his retirement. For Mulvihill, it's true that she didn't want to get vaccinated and that that led to her separation, her honorable discharge from the military. But again, she chose not to challenge that separation before the military. So there's sort of no nowhere for that to go. So in terms of the medical exemptions, I think this court could say you can have a medical that it just there's no longer anywhere for that relief to operate on. And I think it would just boil down to the sort of moral vindication that this court has held is not sufficient to sort of maintain a live controversy. There would be no practical effect. So even we disagree, obviously, with plaintiff's assertion about driving them out, but it's also neither here nor there for the mootness question. And of course, it doesn't resolve the standing issue. So I'm sorry, just for clarification, the driving them out point, is that precluded by the fact that there was no challenge to the separation? Is that your point? So the challenge to the separation, I think, is irrelevant for Robert, but as to Mulvihill, I think what I'm saying is it undermines their sort of they've been driven out theory. But at the end of the day, it doesn't affect the legal analysis of mootness, which is just based on whether this court can sort of give them the relief they asked for, and whether that relief will then have a real world effect on plaintiffs. And of course, because they're not in the military, it can't have any effect for them. So you're saying even if we did drive them out, it's still moot? Again, obviously, we did not drive them out, but that but yes, correct, Your Honor. Well, as to Mulvihill, she's still in until the 21st, right? No, Mulvihill separated, she was honorably discharged on September 1st. So Robert retires on Monday, he's already on terminal leave, which is basically the last directly use of your leave before you leave the military. He's not subject to the vaccine requirement while he's on terminal leave. And so he's already not subject to the requirement. And as of Monday, when he's retired, for reasons that are unrelated to the vaccine requirement, then, you know, even more so, he will not be subject to the vaccine. Okay, so Mulvihill, even though she would allege presumably that she separated by being driven out, she's already separated. She's already separated. Okay, let's reel it back to the just disability argument, and specifically the question of just help me to understand some timeline, basic timeline issues here. Okay, at the time they filed the complaint, there was no compulsion at all. The President had not issued any order. The Secretary of Defense had not issued his, everybody needs to be vaccinated. Right. Okay, at the time that this litigation played out, and the district court ruled, even at that point, there was a temporary exemption that had been granted to one, and the other was applying to get one, right? And so even then, at the point that the district court ruled, no one was under imminent requirement to be vaccinated. That's exactly right, Your Honor, yes. Okay. Yes. And just one sort of point consistent with that, just to kind of clarify some statements from plaintiff's filings, the DOD vaccine requirement issued in August, the actual deadline to get vaccinated was actually not until late November, December. It depends a little bit on the service, but I think plaintiff sort of characterizes, you know, immediately there was sort of compulsion, and that's also not accurate. It was November, you say? I believe for the Marines, it was the end of November, and then for the Army, I think it was mid-December. Okay. And they already had, Mulvihill had her temporary exemption by that time, and Robert's exemption request was pending, which protected him from the vaccine requirement. Okay. If there are no further questions. Yes. Let me ask this question as it relates to threshold grounds for ruling. At least it's my understanding of the law, that let's assume we have this mootness argument that you recently made, and then there is the threshold judiciability arguments that existed based upon the district court's order. We have leeway, and there is nothing to preclude us from choosing whichever one we want to choose and going that way. Is that your understanding of the law? Yes, Your Honor. They all go to Article III's case or controversy requirement, and any one, I think, could be the sort of first line of the court's decision. No more questions? We ask that this court affirm. Thank you. May it please the court. My name is David Wilson on behalf of the plaintiffs. Your Honor, first, what I'd like to reiterate is the timing. The first question, yes, the complaint was filed on 17 August, and the memo from the SECDEF came out on 24 August, but they were under the imminent threat of the mandate. Everyone in the military knew this mandate was coming.  We disagree with the defendants. There wasn't a licensed vaccine. Commonarity was licensed on the same day that it expired, the same day. It was either the 24th of August or the 23rd of August. Regardless, there was no licensed vaccine available to any of the service members. BioNTech from Pfizer was the only one that was available within that Pfizer scheme, and they compared it to commonality, and it says it has the same formulation. Same formulation doesn't mean licensed. That's like saying, I have a sedan, and he has a sedan. They're the same formulation, but they're not the same car. Or if I were to say, hey, I went to the motor vehicle department, and they gave me my license, but oh, by the way, they extended my permit. That doesn't make any sense. So they can't lay their argument on, it was licensed, so this is all new. There was no licensed vaccine available to the military at all. With regards to- I need to be clear on that argument. I mean, the brand name for the Pfizer drug, what did you call it? Commonality. All right. The brand name for the drug was still Pfizer's drug, or let me make it a different point. There was a licensed vaccine for COVID at the time the district court ruled. Is that not right? Not in the U.S. It was licensed in Germany. All right. And the point would be Pfizer would say that it's the same drug, right? In their literature, it said it had the same formulation, but it was legally distinct. And again, as I stated, it wasn't available to the military. There was extensive research looking for it to be able to say, and many soldiers stood up and said, okay, I will follow this order with the licensed vaccine, which the SECDEF memo said, full licensure. And they asked for commonality, and it wasn't available at any point. So now, today, is the Pfizer vaccine fully FDA approved? No. It's not? It's not. Okay. And that's why- As it relates to adults, and we're only talking adults. I'm only talking adults, okay? So if you're saying no because of something related to the use on children, my question is, is it fully licensed by the FDA for use on adults? Our understanding is there is no fully licensed vaccine at this point in time for- Well, I'm going to exclude children. For adults, our belief is no, there's not. Your belief is no, there's not today? Correct. Okay. It's still under emergency use authorization. Well, no. I mean, I'll go back and check the record, but I don't think that's quite correct. I mean, so you're saying that what we just heard, that the only reason the emergency use authorization is still on is because there are some caveats with other uses, like for pediatrics. But with respect to adults, the FDA has fully approved. Well- Yes or no, is that correct? Our understanding is there is not a fully licensed vaccine. It will be July of 2023 before, by the FDA standards and testing, they could actually have a fully licensed vaccine. That is our understanding. And one thing I would note is that the phraseology that the military has been using is approved, approved. Approved doesn't mean licensed. Approved, the EUA was approved for use because they felt they needed it in an emergency. That does not mean licensed. With regards to the movements as well, Sergeant Mobile and Sergeant Robert, they were driven out when their exemptions were denied. And I don't believe Staff Sergeant Robert's request for an exemption was until about last spring. So he had not requested an exemption, but he was pulled out of his job. He was harassed. They were pushed out of the military. So he was offered a medical board because of injuries. He took that because otherwise, if he had stayed, he would have received a GOMAR, a general officer memorandum of reprimand that many service members got, and then potentially discharged. And he was at 16 years. It was more advantageous to say, well, I'll go through the medical board process and potentially get a retirement based on disability versus being forced out. Staff Sergeant Mobile took a pregnancy chapter rather than being vaccinated. Neither one of them had been denied an exemption. Neither one of them had availed themselves of the military's appeal process. I mean, you can say he would have been driven out, but there's just no basis to know that he would have been driven out. There's no basis to know he would have been denied an exemption. It's a religious exemption is what they were seeking. And who knows whether they would have gotten it or not. It's our understanding at this point in time that Staff Sergeant Robert's request for an exemption was recommended, disapproved by his commander, and then put in the commander's drawer. We don't know without further research whether or not that went all the way up the chain and came back down or just sat on the record. We just found out in the last 30 days. If it's not on the record, we really can't rely on it. I understand. All right, counsel, your time is up. Thank you. The case is submitted.